UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

XUAN HAI NGUYEN,

                    Petitioner,

     v.

BRUCE SCOTT ET AL.,

                    Respondents.

Case No. C25-1988-SKV

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS

Petitioner Xuan Hai Nguyen is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Petitioner, acting pro se, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 in which he asserts that his prolonged detention without a bond hearing violates the Due Process Clause of the Fifth Amendment to the United States Constitution.[1] *See* Dkt. 1 at 2. He seeks immediate release or a bond hearing within seven days of the Court's order. *See id.* at 9.

[1] Petitioner disclosed that he received some assistance with his filings from his immigration attorney due to language constraints. *See* Dkt. 2 at 4. He twice moved for counsel to be appointed to represent him in this matter. *See* Dkts. 2, 6. The Court denied his first request without prejudice because his likelihood of success on the merits and the complexity of his case were not yet apparent, and he did not include a financial affidavit. *See* Dkt. 5 at 2. Petitioner subsequently refiled his request, again without a financial affidavit, seeking leave to proceed *in forma pauperis* and appointment of his immigration attorney. *See* Dkt. 6 at 1. Plaintiff further asked the Court to permit his immigration attorney to appear *pro hac vice* and to waive the local counsel requirement. *See id.*; Dkt. 10 at 1. The Court again denied his requests without prejudice to him refiling a renewed request compliant with this Court's rules and supported by a financial affidavit. *See* Dkt. 11 at 2–4.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 1

Respondents, in a return petition, argue that Petitioner is lawfully detained pursuant to 8 U.S.C. § 1225(b)(2) and is not entitled to a bond hearing under that statute. *See* Dkt. 8 at 3. Petitioner did not file a traverse.

Having considered the petition, the return, and the governing law, the Court herein GRANTS the petition and ORDERS Respondents to provide Petitioner with a bond hearing within fourteen days of the date of this Order.

## I.    BACKGROUND

Petitioner is a native and citizen of Vietnam. *See* Dkt. 1 at 3. He states that he is a devout Catholic and faced religious persecution in Vietnam. *See* Dkt. 1-1 at 5. Fearing imprisonment, Petitioner asserts that he fled Vietnam and fell into the hands of human traffickers who took him through Dubai, United Arab Emirates, multiple countries in Africa, Brazil, Peru, Colombia, Panama, Costa Rica, Nicaragua, Honduras, and Mexico. *See* Dkt 1-1 at 5–6. He states that the traffickers extorted his family for large sums of money on multiple occasions (totaling approximately $135,000.00) by holding him hostage and threatening his safety, confined him in an abandoned building in South Africa for about four months, and forced him to travel by foot and bus from Brazil to the southern border of the United States. *See* Dkt. 1 at 3; Dkt. 1-1 at 5–6, 9.

On or about November 15, 2024, Petitioner crossed into the United States and was immediately taken into custody by Border Patrol. *See* Dkt. 9-1 at 3. He expressed fear of returning to Vietnam and ultimately applied for asylum, withholding of removal, and protection under the Convention Against Torture. *See* Dkt. 1 at 3.

On August 13, 2025, following a merits hearing, an immigration judge denied Petitioner all three forms of relief and ordered him removed to Vietnam. *See id.*; Dkt. 9-3 at 2. On

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 2

September 9, 2025, Petitioner appealed that decision to the Board of Immigration Appeals ("BIA"). *See* Dkt. 9-4 at 2. His appeal remains pending. *See* Dkt. 1 at 3; Dkt. 8 at 2.

Petitioner has remained detained since being taken into custody on November 16, 2024. He indicates that he suffers from severe trauma due to the religious persecution and trafficking he experienced, and that his symptoms include anxiety, depression, and post-traumatic stress disorder. *See* Dkt. 2 at 2. He asserts that no mental health support is available at NWIPC. *See id.* Petitioner has family in Washington who are willing to support him financially, medically, and emotionally if he is released. *See* Dkt. 1 at 4; Dkt. 1-1 at 9–10.

## II.     DISCUSSION

### A.     Statutory Framework and Legal Standards

The parties agree that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2). *See* Dkt. 1 at 5; Dkt. 8 at 3. Noncitizens are considered "applicants for admission" to the United States when they "arrive" in the United States or are "present" in this country but have "not been admitted." 8 U.S.C. § 1225(a)(1). "[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b)(1) applies to noncitizens who are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.* (citing § 1225(b)(1)(A)(i)). Section 1225(b)(2) is broader and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)[.]" *Id.*

"Normally, noncitizens covered by § 1225(b)(1) are subject to an expedited removal process that does not include a hearing before an IJ or review of the removal order." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1111–12 (W.D. Wash. 2019) (citing 8 U.S.C.

§ 1225(b)(1)(A)(i)).  However, where a noncitizen "indicates either an intention to apply for asylum . . . or a fear of persecution," they must be referred for an interview with an asylum officer.  *Id*. (quoting 8 U.S.C. § 1225(b)(1)(A)(ii); citing 8 C.F.R. § 208.30(d)).  If the officer finds a credible fear of persecution, the noncitizen "shall be detained for further consideration of the application for asylum."  *Id*. (quoting 8 U.S.C. § 1225(b)(1)(B)(ii)).

Both § 1225(b)(1) and § 1225(b)(2) mandate detention of noncitizens for the entirety of the applicable proceedings.  *Jennings*, 583 U.S. at 302.  And the "statute does not impose 'any limit on the length of detention' pending a decision on the asylum application and does not authorize bond hearings or release on bond."  *Banda*, 385 F. Supp. 3d at 1112 (quoting *Jennings*, 583 U.S. at 296).  However, both the Supreme Court and Ninth Circuit have "grappled . . . with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing."  *Rodriguez v. Robbins*, 804 F.3d 1060, 1067 (9th Cir. 2015) (quoted source omitted) (discussing, *inter alia*, *Zadvydas v. Davis*, 533 U.S. 678 (2001), *Demore v. Kim*, 538 U.S. 510 (2003), and *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005))*, rev'd sub nom. Jennings v. Rodriguez*, 583 U.S. 281 (2018); *see also Toktosunov v. Wamsley*, C25-1724-TL, 2025 WL 3492858, at *2–4 (W.D. Wash. Dec. 5, 2025) (discussing case law).

In *Jennings*, the Supreme Court held that § 1225(b) "unambiguously authorizes detention pending resolution of removal proceedings and does not plausibly suggest a 6-month limitation or periodic bond hearings."  *Banda*, 385 F. Supp. 3d at 1115 (citing *Jennings*, 583 U.S. at 297, 303).  While *Jennings* declined to address whether the Constitution places limits on prolonged detention under the Immigration and Nationality Act, *see Jennings*, 583 U.S. at 312, the Ninth Circuit post-*Jennings* expressed "grave doubts that any statute that allows for arbitrary prolonged

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 4

detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so[,]" *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018).  Moreover, "[n]early all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." *Maliwat v. Scott*, C25-788, 2025 WL 2256711, at *3 (W.D. Wash. Aug. 7, 2025) (quoting *Banda*, 385 F. Supp. 3d at 1116).

Neither the Supreme Court, nor the Ninth Circuit has settled on a test for assessing the constitutionality of prolonged mandatory detention.  *See Banda*, 385 F. Supp. 3d at 1106.  This Court applies the "*Banda*" test in determining whether a noncitizen's detention under § 1225(b) violates due process.  *See, e.g.*, *Maliwat*, 2025 WL 2256711, at *3; *Hong v. Mayorkas*, C20-1784-LK, 2022 WL 1078627, at *4–5 (W.D. Wash. Apr. 11, 2022).  In *Banda*, the Court found "unreasonably prolonged detention under § 1225(b) without a bond hearing violates due process." *Banda*, 385 F. Supp. 3d at 1106, 1117.  The Court declined to adopt a rule that detention became unreasonably prolonged at six months, explaining that, pursuant to *Zadvydas*, "at six months, the burden is on the detainee—not the government—to establish a basis for release[,]" and found such a rule would be "inconsistent with the fact-dependent nature of the constitutional question before the Court, namely whether petitioner's prolonged detention has become unreasonable." *Id*. at 1117 (citing *Zadvydas*, 533 U.S. at 701).  The Court, instead, adopted a multi-factor test to apply in making the determination of whether § 1225(b) detention has become unreasonable, considering:  "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 5

government; and (6) the likelihood that the removal proceedings will result in a final order of removal." *Id*. at 1106 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)).

**B.   Application of the *Banda* Test**

Respondents limit their arguments to reprising the statutory framework and do not acknowledge this Court's utilization of the *Banda* test. *See* Dkt. 8 at 3. While Petitioner does not explicitly address the *Banda* test, he submitted information relevant to its factors through his filings and exhibits. In view of its precedents, the Court applies that test in determining whether Petitioner's continued detention without a bond hearing is justified. The Court thereafter considers the relief requested by Petitioner.

*1.   Length of Detention*

The first factor, the length of detention to date, is the most important one. *See Banda*, 385 F. Supp. 3d at 1118. "The longer mandatory detention continues . . . the harder it is to justify." *Murillo-Chavez v. Garland*, C22-0303-LK-MLP, 2022 WL 16555994, at \*5 (W.D. Wash. Aug. 30, 2022), *report and recommendation adopted*, 2022 WL 16553176 (W.D. Wash. Oct. 31, 2022) (citing cases). Petitioner has been continuously detained since November 15, 2024—approximately fourteen months as of the date of this Order. This period of detention falls squarely within the range of what this Court typically finds unreasonable. *See, e.g.*, *Maliwat*, 2025 WL 2256711, at \*4 (citing cases finding periods of detention ranging from eleven to thirty months to favor the detainee; finding same for a petitioner detained for nearly twelve months); *see also Toktosunov*, 2025 WL 3492858, at \*4 (finding sixteen months of detention favored detainee); *Banda*, 385 F. Supp. at 1118–19 (finding approximate seventeen-month detention

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 6

strongly favored detainee). The Court therefore finds the first *Banda* factor weighs in Petitioner's favor.

### 2. Likely Duration of Future Detention

Under the second *Banda* factor, the Court considers how long the petitioner's detention is likely to continue absent judicial intervention, *i.e.,* "the anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 119 (quoting *Jamal A.*, 358 F. Supp. 3d at 859). Petitioner claims there is no end in sight to his detention because his appeal to the BIA may take months to resolve and, if denied, he could still seek judicial review. *See* Dkt. 1 at 8. This Court has observed that BIA appeals can take over six months, and it recognizes that any further appeals to the federal courts will take substantial time to resolve. *See Toktosunov*, 2025 WL 3492858, at *5. Given that Petitioner's appeals process is likely to take a number of additional months, if not more, this factor weighs in Petitioner's favor.

### 3. Conditions of Detention

Under the third *Banda* Factor, the Court considers the conditions of Petitioner's detention at the facility where he is currently detained. "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. at 1119 (quoted source omitted).

Petitioner asserts that he sustained significant trauma from persecution in Vietnam and as a victim of human trafficking, and that no mental health support is available at NWIPC to treat his severe anxiety, depression, and post-traumatic stress disorder. *See* Dkt. 2 at 2, 8. He does not otherwise address the conditions at NWIPC. Nonetheless, this Court has found in prior actions that conditions at NWIPC are "similar . . . to those in many prisons and jails." *Maliwat*,

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 7

2025 WL 2256711, at *6 (citing *Doe v. Bostock*, 2024 WL 3291033, at *11 (W.D. Wash. March 29, 2024); *Rahman v. Garland*, 2025 WL 1920341, at *4 (W.D. Wash. June 26, 2025)); *see also Toktosunov*, 2025 WL 3492858, at *5. Respondents have not demonstrated that a different conclusion is warranted here. In view of those conditions, plus the alleged denial of mental health treatment, the third factor weighs in Petitioner's favor.

        4.    *Delays in the Removal Proceedings Caused by Petitioner*

Under the fourth *Banda* factor, the Court considers delays in the removal proceedings caused by the Petitioner. *See Banda*, 385 F. Supp. 3d at 1119. Documents provided by Petitioner indicate that he retained an attorney and filed an application for asylum by June 24, 2025, within approximately six months of his arrival. *See* Dkt. 1-1 at 40 (Proof of Service). After an immigration judge denied his application, he filed an appeal less than one month later. *See id.* at 15, 22; Dkt. 9-4 at 2. Absent any indication of a petitioner-caused delay, this factor weighs neutral. *See, e.g., Toktosunov*, 2025 WL 3492858, at *5 (finding factor weighed neutral despite the petitioner's five-month delay in filing for asylum).

        5.    *Delays in the Removal Proceedings Caused by Respondents*

Under the fifth factor, the Court "considers the nature and extent of any delays in the removal proceedings caused by the government." *Banda*, 385 F. Supp. at 1120. Petitioner does not point to any delays in his case occasioned by Respondents, and the record does not evince any. There is no basis for treating the absence of government-caused delay differently than the absence of petitioner-caused delay. *See Toktosunov*, 2025 WL 3492858, at *5. Accordingly, just as the fourth factor discussed above is neutral, so too is the fifth factor.

        ///

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 8

*6.        Likelihood Removal Proceedings Will Result in Final Order of Removal*

Finally, under the sixth *Banda* factor, the Court considers "the likelihood that the final proceedings will culminate in a final order of removal." *Banda*, 385 F. Supp. 3d at 1120 (quoted source omitted). The Court, in other words, considers whether the petitioner has asserted any defenses to removal. *Id*. "Where a noncitizen has not asserted any grounds for relief from removal, presumably the noncitizen will be removed from the United States, and continued detention will at least marginally serve the purpose of detention, namely assuring the noncitizen is removed as ordered." *Id*. (cited source omitted). "But where a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id*. (quoted source omitted).

Petitioner has applied for various forms of relief and was denied. He is presently litigating his appeal. The Court is not presently positioned to determine whether his appeal is nonfrivolous or the likelihood that he will prevail. Accordingly, this factor weighs neutral. *See id.*

*7.        Weighing the Factors*

In sum, three factors (length of detention, duration of future detention, and conditions of detention) weigh in Petitioner's favor, including the most important one—length of detention to date. The other three factors (delays caused by Petitioner, delays caused by Respondents, and likelihood removal proceedings will result in final order of removal) are neutral. No factors weigh in Respondents' favor. The Court therefore concludes that the *Banda* test, on balance, favors Petitioner, that his continued detention under § 1225(b) has become unreasonable, and that due process requires that he be provided a bond hearing. *See, e.g.*, *Maliwat*, 2025 WL 2256711, at *8–9 (finding same where two factors, including length of detention, clearly favored

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 9

petitioner, the two factors considering delay were either neutral or slightly favored petitioner, and the final two factors were neutral; noting that cases finding a petitioner not entitled to a bond hearing "often find that several factors weigh in favor of the government or that more factors are neutral and favor the government than favor the petitioner."); *Banda*, 385 F. Supp. 3d at 1120 (finding same where four factors weighed in petitioner's favor and two were neutral).

### C.   Relief

Having found Petitioner's continued detention unreasonable, the Court turns to the relief requested.  Petitioner requests that the Court issue a writ of habeas corpus ordering his immediate release or, in the alternative, a bond hearing within seven days.  He further asks the Court to order that, at any bond hearing, the immigration judge must assess Petitioner's risk of flight and dangerousness with the Government bearing the burden of proving by clear and convincing evidence that no conditions of release would suffice.  *See* Dkt. 1 at 10.  Finally, Petitioner requests that the Court issue an order providing for an award of costs.  *See id.*

The Court, consistent with the practice of this District, will order that a bond hearing be held before an immigration judge within fourteen days of this Order.  *See, e.g.*, *Toktosunov*, 2025 WL 3492858, at *6; *Maliwat*, 2025 WL 2256711, at *10.  Also, and as this Court has previously recognized, Respondents are properly held to a clear and convincing standard of proof at that hearing, *see Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), and, if they fail to meet that burden, Petitioner's financial circumstances and alternative release conditions must be considered, *see, e.g., Toktosunov*, 2025 WL 3492858, at *6; *Maliwat*, 2025 WL 2256711, at *10. Finally, the Court observes that Petitioner's request for costs must be set forth in a fee petition pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

///

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 10

### III.    CONCLUSION

Based on the foregoing, this Court hereby FINDS and ORDERS as follows:

(1)    Petitioner's petition for writ of habeas corpus (Dkt. 1) is GRANTED.

(2)    Within **fourteen (14) days** of the date of this Order, Respondents shall provide Petitioner an individualized bond hearing that complies with the requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011).

(3)    Any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 26th day of January, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 11